EXHIBIT A

IN THE COURT OF COMMON PLEAS
CLINTON COUNTY, OHIO

| | |
|---|---|
| PITTSBURG TANK & TOWER GROUP, INC., | CASE NO. |
| 1 Watertank Place Henderson, Kentucky 42420 | |
| and | **COMPLAINT** |
| PITTSBURG TANK & TOWER COMPANY, INC., | **[JURY DEMAND ENDORSED HEREON]** |
| 1 Watertank Place Henderson, Kentucky 42420 | |
| and | |
| PITTSBURG TANK AND TOWER MAINTENANCE CO., INC. | |
| 1 Watertank Place Henderson, Kentucky 42420 | |
| Plaintiffs, | |
| vs. | |
| SIERRA PIEDMONT, INC., | |
| c/o Statutory Agent Cogency Global Inc. 3958-D Brown Park Drive Hilliard, Ohio 43026 | |
| and | |
| GERALD ROBINSON, P.E. | |
| 2090 East Clower Street Bartow, Florida 33830 | |
| Defendants. | |

Now comes Plaintiffs Pittsburg Tank & Tower Group, Inc., Pittsburg Tank & Tower Company, Inc., and Pittsburg Tank and Tower Maintenance Co., Inc. (collectively "PTT") and state for their Complaint against Sierra Piedmont, Inc. ("Sierra") and Gerald Robinson, P.E. ("Robinson") (collectively "Defendants") as follows:

1.      PTT restates the allegations contained in the Complaint filed by R&L Carriers, Inc., R&L Carriers Shared Services, LLC, and Greenwood Motor Lines, Inc. d/b/a R+L Carriers (collectively "R+L") in the Circuit Court of Henderson County, Commonwealth of Kentucky, Case Number 22-CI-00637, filed on January 24, 2023, not for the purposes of admitting, and which allegations PTT denies, but for purposes of stating the Complaint against Defendants. A copy of this Complaint is attached hereto as Exhibit 1.

2.      At all times relevant herein, Pittsburg Tank & Tower Group, Inc., Pittsburg Tank & Tower Company, Inc., and Pittsburg Tank and Tower Maintenance Co., Inc. are corporations organized and existing under the laws of the Commonwealth of Kentucky with their principal places of business in the Commonwealth of Kentucky.

3.      At all times relevant herein, Sierra Piedmont is a corporation organized and existing under the laws of the State of Georgia with its principal places of business in the State of Georgia, authorized to conduct business in the State of Ohio, and maintains a statutory agent in the State of Ohio.

4.      At all times relevant herein, Gerald Robinson, P.E. was a resident of the State of Florida and an employee, agent, and/or representative of Sierra Piedmont, Inc.

5.      Venue is proper in Clinton County, Ohio as the claim for relief arose in Clinton County and the affected real property is located in Clinton County.

2

6.     Jurisdiction is proper as Defendants engaged in tortious activity in the State of Ohio, conducted business in the State of Ohio, and were present in the State of Ohio at all times relevant herein.

7.     Jurisdiction is proper as Sierra is licensed to do business in the State of Ohio, maintains an active registration with the State of Ohio Secretary of State, maintains an active statutory agent in the State of Ohio, and derives substantial profits from business transacted in the State of Ohio.

8.     Defendants have had continuous and systematic contacts within the State of Ohio sufficient to justify the exercise of judicial power with respect to all of PTT's claims in this matter, based upon past business transactions performed in the State of Ohio by Defendants.

9.     By engaging in multiple past business transactions in the State of Ohio, Defendants purposefully availed themselves of the privilege of acting in the State of Ohio and/or causing a consequence in the State of Ohio.

10.     By engaging in multiple past business transactions in the State of Ohio, Defendants' connection with the State of Ohio makes the exercise of jurisdiction reasonable.

11.     This Court has personal jurisdiction over Defendants pursuant to R.C. §2307.382 in that Defendants transact business in the State of Ohio, contracted to supply services in the State of Ohio, and caused tortious injury in the State of Ohio, amongst other things.

12.     In or about October 2016, R+L entered into a Master Services Agreement ("MSA") with Sierra pursuant to which Sierra agreed to provide environmental compliance services at R+L's headquarters located at 600 Gilliam Road, Wilmington, Clinton County, Ohio.

13.     One of the services that Sierra provided to R+L was to develop, maintain, and certify a Spill Prevention Control and Countermeasures Plan ("SPCC Plan") to prevent spills of

3

hazardous materials at R+L's Wilmington, Ohio headquarters, and, in the event such spills were to occur, to quickly and effectively counter them to minimize any impact on the environment.

14.     SPCC plans are required under the Clean Water Act to prevent hazardous materials from reaching navigable waters and to contain discharges of such hazardous materials. Further, SPCC plans must be updated every 5 years.

15.     In August 2017, Sierra prepared the SPCC Plan.

16.     The SPCC Plan for the Wilmington headquarters was a "Tier 1" plan, which means that it must be certified by a professional engineer. *See* 40 C.F.R. § 112.3(d).

17.     Sierra's engineer, agent, employee, and/or representative, Robinson, certified the SPCC Plan.

18.     Robinson was supposed to visit and understand the operations and infrastructure at the Wilmington headquarters and to raise and/or correct any issues that needed to be addressed.

19.     Based upon information and belief, Robinson visited R+L's Wilmington headquarters and certified the SPCC Plan.

20.     Based upon information and belief, Defendants were required to visit R+L's Wilmington headquarters periodically to confirm the efficacy of the SPCC, and in fact did visit the headquarters over several years.

21.     At all times relevant herein, R+L has maintained a 1,000,000 gallon above ground diesel storage tank (the "Tank"), covered by the SPCC Plan, at its Wilmington headquarters.

22.     The Tank sits on a concrete foundation inside an earthen containment with an earthen berm.

23.     The Tank was designed so that leaks or spills would flow into the earthen berm that surrounds the Tank.

4

24.     Drainage from the earthen berm flows into a stormwater drain system with a sump pump.

25.     Drainage from the drain and sump flows to the adjacent a swale and ultimately into a retention pond that is discharged at Outfall #1 into Dutch Creek.

26.     In September 2021, R+L contracted with PTT for PTT to perform an American Petroleum Institute ("API") 653 Out-of-Service inspection of the Tank.

27.     On September 20, 2021, R+L took the Tank out of service. R+L emptied the Tank so that the Tank could be cleaned and inspected. To sufficiently empty the Tank prior to the inspection, R&L employees Josh McClain and Brandon Lining removed the cover of a flange on the side of the Tank so that R+L could pump diesel out of the Tank.

28.     On September 24, 2021, PTT contracted with InterSpec, LLC to perform an API-653 inspection of the Tank. InterSpec is a certified inspector of bulk storage tanks located in Virginia Beach, Virginia. InterSpec is certified to perform API 653 aboveground storage tank inspections.

29.     On November 1, 2021, InterSpec conducted the API-653 inspection of the Tank.

30.     Based upon information and belief, between February 25 and March 4, 2022, R+L re-filled the Tank with diesel via various diesel tank drivers. The Tank received diesel until approximately 4:50 p.m. on March 4, 2022. At that time, the Tank contained approximately 162,000 gallons of diesel.

31.     At 4:09 p.m. on March 5, 2022, the Wilmington Fire Department received a call from a female who reported an odor and oily sheen on Dutch Creek. The Wilmington Fire Department investigated and detected a diesel fuel smell at Dutch Creek. The Clinton County EMA and Ohio EPA were notified. Ronald Stryker, Chief of the Port William Fire District, called R+L

and notified them of the release at 5:10 p.m. on March 5, 2022. R+L claimed it was unaware of any leaks/spills at its facility.

32.     At 5:40 p.m., Chief Stryker arrived at R+L's facility. He discovered that diesel fuel was leaking from a flange on the Tank at a rate of approximately 1-2 gallons per minute. At 5:55 p.m., Chief Stryker secured the cover of the flange which stopped the release. It was determined that approximately 22,625 gallons of diesel had been released from the Tank.

33.     Although the diesel leaked from a flange that R+L removed to empty the Tank and failed to secure prior to re-filling the Tank with diesel, R+L's secondary containment apparatus, covered in the SPCC Plan, should have contained the spill and prevented the diesel from infiltrating Dutch Creek.

34.     Based upon information and belief, after the diesel release, the U.S. EPA inspected R+L's facility and reviewed the SPCC Plan. Upon information and belief, the U.S. EPA identified over 100 errors and omissions in the SPCC Plan, including the following:

a.     facility diagrams were inaccurate;

b.     incorrect calculation of the planning distance to determine the distance at which an oil discharge from the facility could cause injury to fish and wildlife and sensitive environments, which R+L alleges resulted in a failure to prepare a facility response plan;

c.     Table 2 of the SPCC Plan shows drainage from the Tank's secondary containment system sump flow into a retention pond, but R+L alleges that this was not discussed in the SPCC Plan; and

d.     the SPCC Plan states that R+L conducts regularly scheduled inspections of such equipment, but R+L alleges the SPCC Plan does not explain the procedure for inspections or monitoring programs to detect equipment failure and/or discharge.

6

35.     In addition, the sump pump installed was supposed to be manually activated to prevent inundation of pollutants, including diesel, into the retention pond, which could result in overflow into Dutch Creek.

36.     However, at the time of the release, the sump pump was automatic which resulted in a continuous pumping of diesel through the secondary containment system, and in turn, into Dutch Creek.

37.     Defendants were negligent in developing and maintaining the SPCC Plan in that had the SPCC Plan been correctly developed and maintained, the secondary containment apparatus would have worked as intended and prevented the release of diesel into Dutch Creek.

38.     Defendants' conduct was the actual and proximate cause of damages to R+L and PTT, in that PTT has incurred attorneys' fees, litigation costs, and various additional expenses arising from its defense against the R+L action filed against PTT in Kentucky.

## COUNT I – CONTRIBUTION AND INDEMNITY

39.     PTT restates and reavers Paragraphs 1 through 38 of its Complaint as if fully rewritten herein.

40.     In the event that R+L establishes damages against PTT, which damages PTT denies, PTT is entitled to contribution and/or indemnity for any and all damages alleged to have been suffered by R+L or others, for at least the full amount of any damages R+L establishes against PTT, plus attorney's fees and costs in an amount to be determined at trial.

41.     PTT sets forth that to the extent the incident described in R+L's Complaint was proximately caused by the acts, omissions, and/or primary negligence of Defendants, any alleged negligence on the part of PTT, which PTT denies, would be considered secondary and/or passive.

42.     Sierra is vicariously liable under *respondeat superior* for the acts or omissions of Robinson as this conduct occurred in the course and scope of his employment with Sierra.

7

WHEREFORE, PTT prays this Court grant judgment in his favor as to this Complaint against Defendants for all sums that PTT may receive in judgment, retain jurisdiction to decide any motion for sanctions that may be filed, and award PTT its costs, fees, attorney's fees and such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Nicholas P. Resetar
Nicholas P. Resetar (0086507)
nresetar@ralaw.com
Tyler M. Jolley (0092772)
tjolley@ralaw.com
Roetzel & Andress, LPA
625 Eden Park Drive, Suite 450
Cincinnati, OH 45202
Telephone: 330.849.6791
Facsimile: 330.376.4577

**ATTORNEY FOR PLAINTIFFS**

## JURY DEMAND

Plaintiffs demand a trial by jury of the maximum number of jurors permitted by law on all issues so triable.

/s/ Nicholas P. Resetar
Nicholas P. Resetar

8

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

Filed          22-CI-00637     10/31/2022          Clyde Gregory Sutton, Henderson Circuit Clerk

## COMMONWEALTH OF KENTUCKY
## CIRCUIT COURT OF HENDERSON COUNTY

R&L CARRIERS, INC., R&L CARRIERS
SHARED SERVICES, LLC, AND
GREENWOOD MOTOR LINES, INC. D/B/A
R+L CARRIERS
600 Gillam Rd.
Wilmington, OH 45177

        Plaintiffs,

    vs.

PITTSBURG TANK & TOWER GROUP, INC.
1 Water Tank Place
PO Box 913
Henderson, KY 42419,

PITTSBURG TANK & TOWER COMPANY,
INC.
1 Water Tank Place
PO Box 913
Henderson, KY 42419, AND

PITTSBURG TANK AND TOWER
MAINTENANCE CO., INC.
1 Water Tank Place
PO Box 913
Henderson, KY 42419

        Defendants.

Case No.:_____

Judge:_____

Presiding Judge: HON. KAREN L. WILSON (651294)

## **COMPLAINT**

For their Complaint against Defendants Pittsburg Tank & Tower Group, Inc. ("PTTG"),

Pittsburg Tank & Tower Company, Inc. ("PTTC"), and Pittsburg Tank and Tower Maintenance

Co., Inc. ("PTTM") (collectively, "Pittsburg Tank"), Plaintiffs R&L Carriers, Inc., R&L Carriers

COM : 000001 of 000028

Ex. 1

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

Shared Services, LLC ("Shared Services), and Greenwood Motor Lines, Inc. d/b/a R+L Carriers

("Greenwood") (collectively, "R&L") state, as follows:

## INTRODUCTION

1.      Greenwood is a motor carrier involved in the national delivery of freight, and which

operates a terminal in Wilmington, Ohio (the "Wilmington Terminal.")  Greenwood maintains a

1,000,000 gallon diesel tank at the Wilmington Terminal (the "Tank.")  Pittsburg Tank constructed

the Tank and has serviced the Tank since its construction.  In January and February of 2022, PTTG

installed a new double bottom on the Tank.  On or about March 5, 2022, diesel spilled from the

Tank through a flange that was not secured after Pittsburg Tank's work (the "Wilmington Spill").

R&L has incurred significant clean-up and remediation costs and has been exposed to significant

potential fines and liabilities as a result of the Wilmington Spill.  Had Pittsburg Tank properly

inspected and tested the Tank after having completed its work, the unsecured flange would have

been discovered and tightened and the Wilmington Spill would have never occurred.  In addition,

Pittsburg Tank's work was defective and had to be repaired.  As a result, the Tank has not been put

back in service.

## THE PARTIES

2.      R&L Carriers, Inc. is an Ohio corporation with its principal place of business at 600

Gillam Road, Wilmington, Ohio 45177.

3.      R&L Carriers Shared Services, LLC is an Ohio limited liability company with its

principal place of business at 600 Gillam Road, Wilmington, Ohio 45177.

4.      Greenwood Motor Lines, Inc. is a South Carolina corporation with its principal

place of business at 600 Gillam Road, Wilmington, Ohio 45177.

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000002 of 000028

2

Filed          22-CI-00637     10/31/2022          Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

5.      Pittsburg Tank & Tower Group, Inc. is a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business at 1 Water Tank Place, Henderson, KY 42413.

6.      Pittsburg Tank & Tower Company, Inc. is a corporation organized under the laws of the State of Kansas, with its principal place of business at 1 Water Tank Place, Henderson, KY 42413.

7.      Pittsburg Tank and Tower Maintenance Co., Inc. is a corporation organized under the laws of the Commonwealth of Kentucky with its principal place of business at 1 Water Tank Place, Henderson, KY 42413.

## JURISDICTION, VENUE, AND JURY DEMAND

8.      Pursuant to the terms of the December 2, 2021 Proposal (the "December 2021 Proposal"), the Parties agreed that the exclusive venue for any litigation arising out of or relating to Pittsburg Tank's work under the Proposal shall be the Circuit Court of Henderson County, Kentucky.

9.      R&L demands a trial by jury to resolve any factual issues which may be disputed in this case.

## FACTUAL BACKGROUND

10.      Greenwood operates and maintains a 1,000,000-gallon diesel tank at the Wilmington Terminal.

11.      On or about July 19, 2006, pursuant to a Pittsburg Tank proposal and R&L PO Number 106732 (attached hereto as Exhibits A and B), Pittsburg Tank agreed to provide all labor, materials, equipment, engineering, and insurance to design, furnish, fabricate, and erect the Tank.

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000003 of 000028

3

Filed

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

12.     On or about September 20, 2021, pursuant to R&L PO Number 565668 (attached hereto as Exhibit C), Pittsburg Tank agreed to conduct tank cleaning field work and inspection services in accordance with API Standard 653.

13.     In anticipation of that work, R&L drained the Tank, which required the removal of an eight-bolt flange.

14.     Pittsburg Tank subcontracted with InterSpec LLC ("InterSpec") to inspect the Tank and InterSpec issued its API-653 Engineering Inspection Report on November 2, 2021.

15.     On or about December 2, 2021, pursuant to the December 2021 Proposal and R&L PO Number 575536 (attached hereto as Exhibits D and E), Pittsburg Tank agreed to conduct a number of services, including but not limited to, the installation of a steel floor overlay and related work "per API standards."

16.     In its December 2021 Proposal, Pittsburg Tank held itself out as an expert in the tank industry:

> Our wealth of experience encompasses all aspects of tank maintenance services, from paint and repair to dismantle and inspections.  Our expertise expands beyond maintenance to tank design, fabrication, erection and professional engineering services for new tanks and modifications, including raising, lowering and moving services.

17.     After the conclusion of Pittsburg Tank's work and relying on Pittsburg Tank that the Tank was ready to be put back in service, R&L began filling the Tank.

18.     While the Tank was being filled, diesel spilled out of the Tank through the eight-bolt flange that had not been secured, eventually resulting in the Wilmington Spill.

19.     The diesel contaminated R&L's own property.

20.     The diesel also escaped the secondary containment and made its way into nearby Dutch Creek.

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000004 of 000028

Filed          22-CI-00637          10/31/2022          Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

21.     R&L has incurred significant clean-up and remediation costs and has been exposed to significant potential fines and liabilities as a result of the Wilmington Spill.

22.     After the conclusion of the work referenced in the December 2021 Proposal, Pittsburg Tank did not conduct a hydrostatic test under API Standard 653.

23.     Had Pittsburg Tank properly conducted a hydrostatic test, after its work, but before the Tank was refilled, the unsecured flange would have been identified and secured and the Wilmington Spill would have been avoided.

24.     Pittsburg Tank and its subcontractors, including without limitation InterSpec, negligently performed their duties with regard to their inspection, repair, work, and evaluation of the Tank and its necessary structures and appurtenances. Had Pittsburg Tank and its subcontractors, including without limitation InterSpec, properly performed their services, the Wilmington Spill would have been avoided.

25.     In August of 2022, defects in Pittsburg Tank's work under the December 2021 Proposal were discovered. Specifically, welds in the floor bottom were defective and required repair.

26.     As a result of that repair work, R&L has not been able to put the Tank into service and has incurred and will continue to incur business interruption costs and other damages as a result of not being able to purchase and store diesel at reduced prices.

### COUNT I: BREACH OF CONTRACT

27.     R&L realleges and incorporates the foregoing paragraphs above by reference as if fully rewritten herein.

28.     A series of legally binding contracts supported by adequate consideration exists between R&L and Pittsburg Tank.

5

Filed          22-CI-00637          10/31/2022          Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

29.     R&L fully performed its obligations under the contracts.

30.     Pittsburg Tank failed to satisfy its contractual obligations by, among other things, failing to conduct the proper inspections and tests and conducting defective work in installing a new tank bottom.

31.     Pittsburg Tank also failed to satisfy its contractual obligations by, among other things, failing to ensure that its subcontractors, including without limitation InterSpec, performed proper inspections and tests.

32.     As a result of these breaches, R&L has been damaged in an amount to be proven at trial, including without limitation any damages, penalties, fees, and costs that R&L incurs relating to the Wilmington Spill and damages in the form of business interruption, lost business opportunities and lost profits incurred as a result of the Tank being out of service.

## COUNT II:  PROFESSIONAL NEGLIGENCE

33.     R&L realleges and incorporates the foregoing paragraphs above by reference as if fully rewritten herein.

34.     Kentucky law imposes a duty to perform professional services with the reasonable degree of skill and care ordinarily employed in the profession under similar conditions and circumstances separate and apart from any contractual obligations.

35.     Pittsburg Tank holds itself out as an expert in all aspects of tank maintenance including inspections and professional engineering services.   Pittsburg Tank and its subcontractor(s) were responsible for inspection and testing the Tank and the Tank's secondary containment.

36.     Pittsburg Tank and its subcontractor(s) owed R&L a duty outside of the parties' contracts to perform professional services with the reasonable degree of skill and care ordinarily employed in the profession under similar conditions and circumstances.

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000006 of 000028

6

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

37.    Pittsburg Tank and/or its subcontractor(s), including without limitation InterSpec, breached this duty by failing to render services to R&L that meet the reasonable degree of skill and care ordinarily employed in the profession under similar conditions and circumstances.

38.    As a result of these breaches, R&L has been damaged in an amount to be proven at trial, including without limitation any damages, penalties, fees, and costs that R&L incurs relating to the Wilmington Spill and damages in the form of business interruption, lost business opportunities and lost profits incurred as a result of the Tank being out of service.

## COUNT III: NEGLIGENT MISREPRESENTATION

39.    R&L realleges and incorporates the foregoing paragraphs above by reference as if fully rewritten herein.

40.    Kentucky law recognizes negligent misrepresentation where one provides false information for the guidance of others.

41.    R&L relied upon Pittsburg Tank's claimed expertise with respect to tank maintenance services, including necessary inspections.

42.    Pittsburg Tank falsely informed R&L that the Tank was ready to be put back in service when it was not because Pittsburg Tank had not completed the post repair required inspections and tests before turning the Tank back over to R&L.

43.    R&L relied upon Pittsburg Tank's representations.

44.    As a result of these breaches, R&L has been damaged in an amount to be proven at trial, including without limitation any damages, penalties, fees, and costs that R&L incurs relating to the Wilmington Spill and damages in the form of business interruption, lost business opportunities and lost profits incurred as a result of the Tank being out of service.

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000007 of 000028

7

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

WHEREFORE, Claimants R&L Carriers, Inc., R&L Carriers Shared Services, LLC, and Greenwood Motor Lines, Inc. d/b/a R&L Carriers hereby respectfully request entry of a judgment in their favor and against Pittsburg Tank, as follows:

a) Granting judgment against Pittsburg Tank for compensatory damages in an amount to be proven in excess of $1,000,000; and

b) Awarding R&L its reasonable expenses, including attorneys' fees and costs, incurred in connection with seeking this relief, and such other and further relief as the arbitrator deems just and proper.

Respectfully submitted,

*/s/ Carrie A. Shufflebarger*
Carrie A. Shufflebarger (SBN 90705)
Carrie.Shufflebarger@Thompsonhine.com
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, OH 45202-4024
Phone: (513) 352-6700
Fax: (513) 2414771

*To seek Pro Hac Vice Admission:*

Anthony C. White (OH 0062146)
Tony.White@Thompsonhine.com
Stephanie M. Chmiel (OH 0087455)
Stephanie.Chmiel@Thompsonhine.com
THOMPSON HINE LLP
41 S. High St., Suite 1700
Columbus, Ohio 43215
Phone: (614) 469-3200
Fax: (614) 469-3361

William J. Hubbard (OH 0077033)
Bill.Hubbard@ThompsonHine.com
THOMPSON HINE LLP
127 Public Square
3900 Key Center
Cleveland, Ohio 44114
Phone: (216) 566-5500

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000008 of 000028

Filed          22-CI-00637          10/31/2022          Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

Fax: (216) 566-5800

*Attorneys for Claimant R&L Carriers, Inc.,*
*R&L Carriers Shared Services, LLC, and*
*Greenwood Motor Lines, Inc. d/b/a R+L*
*Carriers*

Filed

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

# EXHIBIT

# A

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : **000010 of 000028**

Jan 12 06 08:23a     Dennis Davis            270-869-0204            p.1

# PITTSBURG TANK & TOWER CO., INC.

home Office
P. O. BOX 36
HENDERSON, KY 42419
Tele: (270) 826-9000
Fax: (270) 827-4417
Email: sales@watertank.com

Sales Office
1022 COUNTRY CLUB DR.
HENDERSON, KY 42420
Tele: (270) 869-0404
Fax: (270) 869-0204
Email: DDavis2747@aol.com

SINCE 1919

PROPOSAL#DD3230B

1/11/06

R.L. Carriers
600 Gilliam Road
Wilmington, OH 45177

800-543-5589 ext. 1201 fax 937-382-4769

Re: (1) 74' x 32' Welded Ground Storage Tank
     Wilmington, Ohio

*Post 106730*

*800-499-8265 ext 237 Joe*

*Job # 6183*

Gentlemen,

Thank you for the opportunity to provide this proposal. We are pleased to offer the following pricing information for your consideration:

## SCOPE OF WORK

1) Furnish all labor, materials, equipment, engineering, and insurance necessary to design, furnish, fabricate, and erect, the above referenced carbon steel flat bottom storage tank complete with a concrete ringwall foundation in Wilmington, Ohio.
2) The tank will be furnished with a ¼" lap welded floor. The tank shell will be full penetration butt welded construction. The tank roof will be a 3/16" cone supported by a center column and radial rafters and lap welded on the top side only
3) We are quoting alternate pricing to prime the exterior with an alkyd primer and to apply one full finish coat of industrial enamel (owners choice of color). We do not include any interior coatings in this proposal.
4) All work to be in accordance with API 650.
5) We include the following accessories with this proposal:

## ACCESSORIES

2 – 24" Shell Manway
1 – 24" Roof Manway
1 – Gooseneck Vent
3 – 4" nozzles
1 – exterior caged ladder

| Post-it® Fax Note | 7671 | Date 5-9-06 | # of pages ▶ 1 |
|---|---|---|---|
| To Tim H. | | From Robert Bates | |
| Co./Dept. Clinton County | | Co. R+L Carriers | |
| Phone # 382-3335 | | Phone # 382-1494 | |
| Fax # 937-383-3056 | | Fax # 383-9963 | |

♦ Our price is based on open shop non prevailing wage labor
♦ All materials to be A36 or A36 modified carbon steel.

Clyde Gregory Sutton, Henderson Circuit Clerk

Presiding Judge: HON. KAREN L. WILSON (651294)

10/31/2022

22-CI-00637

Filed

COM : 000011 of 000028

Jan 12 06 08:23a      Dennis Davis           270-869-0204         p.2



**PITTSBURG TANK & TOWER CO., INC.**

SINCE 1919

- ♦ Our work stops at the first exterior flange. We do not include any valves or special fittings or couplings in this proposal. All underground piping if required to be provided by others
- ♦ We have assumed a clear and accessible site with no hindrances to our construction efforts.
- ♦ We have not included any state or local sales and/or use taxes, special licenses, fees, permits, or bonds. If any are required, the cost will be added to the contract price.
- ♦ All water for hydrostatic testing is to be furnished, pumped, piped, and disposed of by others.
- ♦ We do not include any accessories other than the ones listed above
- ♦ Our paint price is based on no heating or containment and all blast debris to be disposed of on site
- ♦ Due to the current volatility in the steel market, our price is firm for 30 days from the date of this proposal
- ♦ Our alternate foundation price is based on 3000 psf at 4' below grade. We do not include any rock excavation or dewatering. All costs of soils testing is to be provided by others

**TERMS**

15% with the order
balance in mutually agreeable progress payments

**SCHEDULE**

Tank erection can begin 6 to 10 weeks after receipt of approved shop drawings.

**PRICING**

(1) 74' x 32' carbon steel welded ground storage tank      $260,350.00
**Ringwall Foundation**                                    ✓ $46,500.00
**Exterior Coatings**                                      $24,500.00

Thank you for the opportunity of offering this proposal. If you have any questions, or require any additional information please feel free to call me at 270-869-0404.

Respectfully submitted,
Pittsburg Tank and Tower Co. Inc.

Dennis Davis
Regional Sales Manager

cc: Rick DiZinno, Vice President

*(handwritten notes):*
- existing site needs to be Dry & Level?
- No Electrical
- no fill station / pump
- no permits.
- existing Site.
- permit.

R+L CARRIERS www.gorlc.com 800.543.5589

tank on site.
60% on site.
30% FILL Assets
10% Painting.
Material Cost.

Project - 4-5 Months
from signing order

Jan 12 06 08:23a    Dennis Davis         270-869-0204        p.2



**PITTSBURG TANK & TOWER CO., INC.**

♦ Our work stops at the first exterior flange. We do not include any valves or special fittings or couplings in this proposal. All underground piping if required to be provided by others
♦ We have assumed a clear and accessible site with no hindrances to our construction efforts.
♦ We have not included any state or local sales and/or use taxes, special licenses, fees, permits, or bonds. If any are required, the cost will be added to the contract price.
♦ All water for hydrostatic testing is to be furnished, pumped, piped, and disposed of by others.
♦ We do not include any accessories other than the ones listed above
♦ Our paint price is based on no heating or containment and all blast debris to be disposed of on site
♦ Due to the current volatility in the steel market, our price is firm for 30 days from the date of this proposal
♦ Our alternate foundation price is based on 3000 psf at 4' below grade. We do not include any rock excavation or dewatering. All costs of soils testing is to be provided by others

**TERMS**

15% with the order
balance in mutually agreeable progress payments

**SCHEDULE**

Tank erection can begin 6 to 10 weeks after receipt of approved shop drawings.

**PRICING**

| | | |
|---|---|---|
| (1) 74' x 32' carbon steel welded ground storage tank | | $260,350.00 |
| Ringwall Foundation | ✓ | $46,500.00 |
| Exterior Coatings | | $24,500.00 |

Thank you for the opportunity of offering this proposal. If you have any questions, or require any additional information please feel free to call me at 270-869-0404.

Respectfully submitted,
Pittsburg Tank and Tower Co. Inc.

Dennis Davis
Regional Sales Manager

cc: Rick DiZinno, Vice President

*[handwritten notes:]*
- Existing site needs to be Dim & Level
- No electrical
- No fill stated / gravel
- No permits.

- pump out existing site.
- RH — obtain Building permit.

- Pittsburg Tank & Tower Co., Inc.
- Building Permit - County —

Project - 4-5 Months from signing order -

# DENNIS DAVIS
## 1022 COUNTRY CLUB DRIVE
## HENDERSON, KY. 42420
### PHONE (270) 827-9705   FAX (270) 869-0204

# FAX TRANSMITTAL

-------------------------------------------------------------------

**DATE: 1-11-06**

**TO: R.L. Carriers**

**ATTN: Mr. Robert Bates, V.P., Purchasing**

**FAX NUMBER: 937-383-9963**

**SUBJECT: PTT Quote # DD3230B**

**___3___PAGE(S) INCLUDING COVER SHEET**

-------------------------------------------------------------------

**Robert,**

**Thank you for the opportunity to provide this proposal.  If you have any questions, or require any additional information, please feel free to give me a call at 270-533-6000 ext. 203.**

**Sincerely**

**Dennis Davis**

Clyde Gregory Sutton, Henderson Circuit Clerk

Presiding Judge: HON. KAREN L. WILSON (651294)

10/31/2022

22-CI-00637

Filed

COM : 000014 of 000028

Filed          22-CI-00637          10/31/2022          Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

# EXHIBIT

# B

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000015 of 000028

# PURCHASE ORDER

**R+L CARRIERS**

**R+L Transfer, Inc.**

| PURCHASE ORDER NUMBER | | REVISION | PAGE |
|---|---|---|---|
| 106732 | | 1 | Page 1 of 3 |
| THIS PURCHASE ORDER NUMBER MUST APPEAR ON ALL INVOICES, PACKING LISTS, CARTONS, AND CORRESPONDENCE RELATED TO THIS ORDER | | | |

PURCHASING DEPARTMENT
P.O. BOX 271, WILMINGTON, OH 45177

SHIP TO :   ***See below for shipping instructions***

VENDOR :  **PITTSBURG TANK AND TOWER COMPANY INC
PO BOX 36
HENDERSON, KY 42419
United States**

BILL TO :   A/P Billing Address
Accounts Payable
P O Box 8000
Wilmington, OH  45177
United States

ALL MATERIALS NOT DELIVERED IN FORTY-FIVE (45) DAYS, UNLESS OTHERWISE SPECIFIED BY THE BUYER, WILL BE CONSIDERED CANCELED

| CUSTOMER ACCOUNT NO. | VENDOR NUMBER | DATE OF ORDER/BUYER | REVISED DATE/BUYER |
|---|---|---|---|
| | 68852 | 19-JUL-2006    Bates, Robert | 13-FEB-2007 |
| PAYMENT TERMS Net 30 | | SHIP VIA: | F.O.B Destination |
| FREIGHT TERMS N/A | | REQUESTOR/DELIVER TO Bates, Robert | CONFIRM TO/TELEPHONE 937-382-1494 |

| ITEM | PART NUMBER /DESCRIPTION | DELIVERY DATE | QUANTITY | UNIT | UNIT PRICE | EXTENSION |
|---|---|---|---|---|---|---|
| | All prices and amounts on this order are expressed in : US Dollar | | | | | |
| | Attention: Dennis Davis | | | | | |
| | Project Site: 600 Gillam Road Wilmington, OH 45177 | | | | | |
| | Reference your Proposal #DD3230B | | | | | |
| | Scope: Furnish all labor, material, equipment, engineering and insurance nesessary to design, furnish, fabricate and erect a 74'x32' welded ground storage carbon steel flat bottom tank complete with a concrete ringwall foundation The tank will be be furnished with 1/4" lap welded floor. The tank shell will be full penetration butt rafters and lap welded on the top side only All work will be compliant wth API 650 Following accessories are included: 2-24" Shell Manway, 1-24" roof Manway, 1-Gooseneck vent, 3-4" nozzles and 1-exterior caged ladder | | | | | |
| 1 | | | 1 | Each | 260350.00 | 260,350.00 |
| | Your #: 1,000,000 GALLON FUEL TANK 72'X32' CARBON STEEL WELDED GROUND STORGAGE TANK | | | | | |
| | SHIP TO: See Above | | | | | |
| 2 | | | 1 | Each | 46500.00 | 46,500.00 |
| | Your #: RINGWALL FOUNDATION | | | | | |
| | SHIP TO: See Above | | | | | |

Clyde Gregory Sutton, Henderson Circuit Clerk    Presiding Judge: HON. KAREN L. WILSON (651294)

10/31/2022    22-CI-00637    Filed    COM : 000016 of 000028    COM : 000016 of 000028

PURCHASE ORDER

**R+L** CARRIERS

**R+L**
Transfer, Inc.

PURCHASING DEPARTMENT
P.O. BOX 271, WILMINGTON, OH 45177

| | | |
|---|---|---|
| PURCHASE ORDER NUMBER | REVISION | PAGE |
| 106732 | 1 | Page 2 of 3 |

THIS PURCHASE ORDER NUMBER MUST APPEAR ON ALL INVOICES, PACKING LISTS, CARTONS, AND CORRESPONDENCE RELATED TO THIS ORDER

SHIP TO : ***See below for shipping instructions***

BILL TO :
A/P Billing Address
Accounts Payable
P O Box 8000
Wilmington, OH 45177
United States

VENDOR : **PITTSBURG TANK AND TOWER
COMPANY INC
PO BOX 36
HENDERSON, KY 42419
United States**

ALL MATERIALS NOT DELIVERED IN FORTY-FIVE (45) DAYS, UNLESS OTHERWISE SPECIFIED BY THE BUYER, WILL BE CONSIDERED CANCELED

| CUSTOMER ACCOUNT NO. | VENDOR NUMBER 68852 | DATE OF ORDER/BUYER 19-JUL-2006 Bates, Robert | REVISED DATE/BUYER 13-FEB-2007 |
|---|---|---|---|
| PAYMENT TERMS Net 30 | | SHIP VIA: | F.O.B Destination |
| FREIGHT TERMS N/A | | REQUESTOR/DELIVER TO Bates, Robert | CONFIRM TO/TELEPHONE 937-382-1494 |

| ITEM | PART NUMBER /DESCRIPTION | DELIVERY DATE | QUANTITY | UNIT | UNIT PRICE | EXTENSION |
|---|---|---|---|---|---|---|
| 3 | | | 1 | Each | 24500.00 | 24,500.00 |
| | Your #: EXTERIOR COATING | | | | | |
| | SHIP TO: See Above | | | | | |
| 4 | | | 1 | Each | 5000.00 | 5,000.00 |
| | Your #: HYRO TEST | | | | | |
| | SHIP TO: See Above | | | | | |

ALL INVOICES PRESENTED FOR PAYMENT MUST CONTAIN THE VENDORS F.E.I.N. OR TAXPAYERS NUMBER.
THIS PURCHASE ORDER IS SUBJECT TO THE BUYERS TERMS AND CONDITIONS OF CONTRACT FOR SALE WHICH ARE ON THE REVERSE SIDE HEREOF AND INCORPORATED BY REFERENCE HEREIN.

| TOTAL | 336,350.00 |
|---|---|

Clyde Gregory Sutton, Henderson Circuit Clerk

Presiding Judge: HON. KAREN L. WILSON (651294)

10/31/2022

22-CI-00637

Filed

COM : 000017 of 000028

R+L CARRIERS-
General Terms and Conditions

A.    ACCEPTANCE.

1.    This order is Buyer's offer to purchase the goods or services described on the reverse hereof from Seller. Buyer's placement of this order with Seller is expressly conditioned upon Seller's acceptance of all of the terms and conditions of purchase contained on or attached to this order.
2.    Any additional or different terms or conditions which may appear in any communication from Seller are hereby expressly objected to and shall not be effective or binding unless specifically agreed to in writing by Buyer's Purchasing Office, and no such additional or different terms or conditions in any printed form of Seller shall become part of this contract despite Buyer's acceptance of goods or services, unless such acceptance specifically recognizes and assents to their inclusions.
3.    Any objections to the terms and conditions hereof shall be ineffective unless Buyer is advised in writing thereof within 10 days of the date of this order.

B.    IDENTIFICATION: All invoices, packages, shipping notices, instruction manuals and other written documents affecting this order shall contain the purchase order number. Packing lists shall be enclosed in each box or package shipped pursuant to this order, indicating the contents therein, invoices will not be processed for payment until all items invoices are received.

C.    SHIPPING INSTRUCTIONS: All goods are to be shipped freight prepaid, F.O.B. destination add to invoice, unless otherwise stated. Where Buyer has so authorized in writing, goods may be shipped F.O.B. shipping point, but Seller shall prepay all shipping charges, route the goods by the cheapest common carrier, or the carrier specified, and list said charges as a separate item on Seller's Invoice. Each invoice for shipping charges shall be accompanied by the original or a copy of the bill indicating that such charges have been paid. Buyer reserves the right to reject C.O.D. shipments. Seller shall not insure the goods for Buyer's account during shipment except upon Buyer's written request, or where the shipping mode is parcel post.

D.    SPECIAL CHARGES: Seller shall be responsible for the payment of all charges for handling, packaging, wrapping, bags, containers and related matters unless Buyer has assumed an express obligation therefore by notation on the reverse side hereof.

E.    DELIVERY: Time is of the essence, and this order may be terminated if delivery is not made or services are not performed by the date specified in this order. No change in the scheduled delivery date or performance will be permitted without Buyer's prior written consent. No acceptance of goods or services after the scheduled delivery date will waive Buyer's rights with respect to such late delivery nor shall it be deemed a waiver of future compliance with the terms hereof.

F.    PAYMENT: Buyer will remit payment to Seller by mail and only upon the receipt of an original invoice, copies of invoices will not be accepted. Seller agrees not to deliver goods on a sight draft basis.

G.    PRICES: This order shall not be billed at prices higher than those shown on this order, unless such increased prices have been authorized by the Buyer. If price is not stated on this order, it is agreed that the goods or services shall be billed at the price last quoted, or paid by a customer of Seller, or the prevailing market price, whichever is lower.

H.    CASH DISCOUNT: If Buyer is entitled to a cash discount, the period of computation thereof will commence on the date of acceptance or receipt of a correctly completed invoice, whichever is later. If an adjustment in payment is necessary due to damage, the cash discount period shall commence on the date on which an agreed adjustment of price is reached. If a cash discount is made part of the contract, but the invoice does not reflect the existence thereof, Buyer is entitled to a cash discount with the period commencing on the date Buyer determines that a cash discount applies.

I.    TAXES: Except as otherwise provided in this order, the contract price shall include all applicable Federal, State and local taxes of any kind in effect on the date of this order.

J.    ASSIGNMENT: Seller shall not assign this contract, or the right to payment due hereunder, without Buyer's prior written consent.

K.    LIENS, CLAIMS AND ENCUMBRANCES: Seller warrants and represents that all the goods will when delivered hereunder, be free and clear of all liens, claims or encumbrances of every kind.

L.    REJECTION: All goods purchased hereunder are subject to Buyer's inspection and approval. If any of the materials or services supplied hereunder are defective in material or workmanship or otherwise not in conformity with the requirements of this order, Buyer shall have the right to either reject them or require their correction, and to return them at Seller's risk and expense, including transportation both ways. Goods rejected by Buyer for whatever reason shall be held, transported and/or stored at Seller's sole expense. Seller shall promptly reimburse Buyer for any such expenses.

M.    DEFAULT: Buyer may, subject to the provisions of paragraph "N" by written notice of default to Seller, cancel the whole or any part of this order or exercise any other remedy provided Buyers of goods by law or in equity including any remedy under the Uniform Commercial Code, in any of the following circumstances:

1.    If Seller fails to make delivery of the goods or to perform the services within the time specified herein or any extension thereof;
2.    If, in Buyer's good faith judgment, the Seller fails to perform any of the other provisions of this order or fails to make progress as to endanger performance of this order is in accordance with its terms and does not cure such failure within a period of 10 days, or such longer period as Buyer may authorize in writing, after receipt of notice from Buyer specifying such failure;
3.    Seller is in breach of any of the terms or conditions of this order; or
4.    If Seller becomes insolvent or makes an assignment for the benefit of creditors, or if there shall be instituted by or against Seller any proceeding under any bankruptcy or for the appointment of a receiver or trustee in respect to any of Seller's property and such proceeding is not dismissed or cured within 60 days.

N.    REMEDIES: Not by way of limitation, the remedies of the parties include:

1.    If Buyer cancels this order in whole or in part as provided in paragraph "M" Buyer may procure upon such terms and in such manner as Buyer may deem appropriate goods or services similar to those canceled and Seller shall be liable to Buyer for any excess costs for such similar supplies or services, provided that Seller shall continue the performance of this order to the extent Buyer canceled under the provisions of this order.
2.    The rights and remedies of Buyer provided in this clause shall not be exclusive but cumulative and are in addition to any other rights and remedies provided by law or equity (or provided under the Uniform Commercial Code), or under this order.
3.    The failure of the Buyer to insist upon strict performance of any of the terms of this order or to exercise any rights hereunder shall not be construed as a waiver of Buyer's rights. Waiver of a breach of any provision of this Purchase Order shall not constitute waiver of full compliance such provision nor shall it be construed as a waiver of any other breach.

O.    WARRANTIES: Seller warrants goods supplied and work or services performed under this order will conform to the specifications and requirements of this order and are merchantable and fit for the particular purposes for which goods are ordinarily employed.

1.    Seller shall be liable for all damages both to Buyer, requester, and its customers incurred as a result of any defect or breach of warranty in any item covered by this order.
2.    The foregoing express warranties shall be in addition to any warranty customarily made by Seller of its product and any implied warranties and shall be construed as conditions as well as warranties.
3.    SELLER'S WARRANTY SHALL EXTEND FOR A PERIOD OF 12 MONTHS AFTER THE ITEM IS DELIVERED AND ACCEPTED BY BUYER AND APPLIED TO ITS INTENDED USE.

P.    COMPLIANCE WITH LAWS: Seller shall comply with all Federal, State and local laws and regulations applicable to this order.

Q.    CHANGES: Buyer may at any time make changes in the delivery schedules, drawings, quantities, designs and specifications but no change will be allowed unless authorized by the Buyer in writing. Buyer may also make changes in the method of shipping or packing and place of delivery by any means or communication. If any such change affects cost or delivery schedules of this order, an equitable adjustment shall be made, provided Seller makes a written claim within 15 days of the date of Buyer's written notification.

R.    TITLE TO SPECIFICATIONS: Buyer shall at all times have title to all drawings and specifications furnished by Buyer or Seller and intended for use in connection with this order. Seller shall not disclose such drawings and specifications to any person, firm or corporation other than Buyer's or Seller's employees, subcontractors, or Government Inspectors. The Seller shall, upon Buyer's request, promptly return all drawings and specifications to the Buyer.

S.    BUYER'S PROPERTY: All material, including tools, furnished or specifically paid for by Buyer unless otherwise specified herein, shall be the property of the Buyer, shall be subject to removal at any time, without additional cost upon demand by the Buyer, shall be used only in filling orders from the Buyer, and shall be kept separate from other materials or tools, and shall be clearly identified as the property of the Buyer. Seller assumes all liability for loss or damage, with the exception of normal wear and tear, and agrees to submit detailed statements of inventory promptly upon request.

T.    QUALITY STANDARDS. If a special brand is listed in this order, the goods being purchased must meet the  standard for quality, performance, and use of such brand. If Seller is willing to supply a product equivalent to the designated special brand, it must first provide the Buyer with descriptive literature identifying its brand, including the quality, performance, and specifications therefore. If Buyer elects to accept goods purported to be equal to the special brand, the goods may be rejected and dealt with as provided in paragraph L hereof, if labor is determined to be nonconforming.

U.    INSPECTION AND QUALITY CONTROL

1.    All items furnished under this order by Seller to Buyer shall be subject to inspection and tests by Buyer. To the extent practicable inspection may be made at all times and places, including the period of manufacture and prior to acceptance.
2.    If inspections or tests are made by Buyer on the premises of Seller, supplier or subcontractor, Seller without additional charge, shall provide all reasonable facilities and assistance for the safety and convenience of such inspectors in the performance of their duties. If inspection or test is made at a point other than the premises of Seller, supplier or subcontractor, it shall be at the expense of Buyer except as otherwise provided in this order. In case of rejections, Buyer shall not be liable for any reduction in value of samples used in connection with such inspection or test. All inspections and tests by Buyer shall be performed in such manner as to not unduly delay the work. Buyer reserves the right to charge Seller any additional cost to inspect and test when items are not ready at time such inspection and test is requested by Seller or where reinspection or retest is necessitated by prior rejection, inspection and acceptance or rejection of the items shall be made as promptly as practicable after delivery as may be specified herein. Failure to inspect, accept or reject goods shall neither relieve Seller from responsibility for such supplies that are not in accordance with the order requirements nor impose liability on Buyer.

V.    INFRINGEMENTS: Seller warrants that Buyer's purchase, installation, and/or use of the goods covered hereby will not result in any claim or infringement, or actual infringement of any patent, trademark, copyright, franchise, or other intellectual property right.

W.    RISK OF LOSS: Regardless of F.O.B. Point, Seller agrees to bear all risk of loss, injury, or destruction of goods and materials ordered herein which occur prior to acceptance by Buyer. No such loss, injury, or destruction shall release Seller from any obligations hereunder.

X.    INDEMNITY: Seller shall indemnify and hold Buyer, its officers, employees, successors, assigns, and/or customers harmless from and against all claims, losses, expenses, damages, causes of actions and liabilities of every kind and nature including without limitation reasonable attorney's fees, without waiver of Seller's obligation to indemnify Buyer hereunder, arising from or out of any alleged breach of any of Seller's obligations or warranties.

Y.    EQUAL EMPLOYMENT OPPORTUNITY: Seller agrees to comply with the provisions of all laws, rules and regulations, including Executive Orders, applicable to this order regarding nondiscrimination because of race, creed, color, sex, age, national origin, physical or mental handicap and veteran status.

Z.    OSHA: Seller shall comply with the conditions of the Federal Occupational Safety and Health Act of 1970 (OSHA), as amended, and the standard and regulations issued thereunder, and certifies that all items furnished and purchased under this order conform to and comply with such applicable standards and regulations.

AA.    SERVICE OR INSTALLATION OF WORK: In the event this order requires the performance of work or installation of goods by Seller upon any property or project of Buyer, the following conditions shall also be applicable.

1.    Seller shall take precautions to protect all property and persons from damage or injury arising out of its work and shall comply with all fire, safety and other applicable regulations prescribed by a governmental agency and by Buyer and/or owner of the project upon which work is being performed, and shall be responsible for observance thereof by all subcontractors, employees, agents, and representatives of Sellers and its subcontractors. Seller shall also obtain at its own expense and provide proof of insurance coverage satisfactory to Buyer for workmen's compensation and property damage, public liability, personal injury, employer's liability and other applicable insurance. The insurance shall contain an endorsement naming Buyer as an additional insured and shall provide that the insurance carrier will give Buyer written notice at least 30 days prior to the effective date of any cancellation. Seller shall furnish or direct its insurance carriers to furnish appropriate certificates of insurance to Buyer and upon the request of Buyer.

2.    Seller shall keep the premises and work free and clear of all mechanics' and materialmen's liens or claims; Seller shall promptly pay for all labor and material and if Seller fails to do so Buyer without waiving any rights or remedies against Seller for a by reason of such failure may, but without any obligation to do so, pay the same and deduct the amount of such payments from sums due Seller hereunder, and Buyer may withhold any payment to Seller until receiving such affidavits, waivers, and releases with respect to claims for labor and materials as Buyer may require.

3.    The work shall remain at Seller's risk prior to written acceptance by Buyer and/or the owner of the project and Seller shall repair at its own expense all work damaged or destroyed by any cause whatsoever.

4.    Seller shall observe and comply with the Safety Rules for (Outside) Contractors, established by Buyer, which are incorporated by reference herein, and which are available to Seller upon request. Further Seller shall observe and comply with the wages, hours and working conditions established by Buyer on the project or required of Buyer by an applicable labor agreement, conditions established by Buyer on the project or required of Buyer by an applicable labor agreement, state law or regulation, pertaining to prevailing wages. These terms extend to all subcontractors also.

5.    Seller shall act as an independent contractor and not as the agent or representative of Buyer.

6.    Seller shall perform its work in accordance with the schedules and work programs established by Buyer and shall fully cooperate with Buyer and others engaged in such work on the entire project may be performed with the utmost speed, consistent with good practices.  In case of conflict, Buyer may direct the necessary coordination.

7.    Seller shall carry on its work so that the premises shall at all times be clean, orderly and free from debris and upon completion, shall remove all equipment and unused materials from the project; clean up all refuse and debris and leave the site of the work clean, orderly and in good condition.

8.    Seller shall require Seller's employees, agents, contractors or subcontractors to abide by Buyer's work and safety rules when work or services are performed at Buyer's premises. Buyer has the right to exclude personnel from Buyer's premises who do not abide by such rules, and at Buyer's direction, to declare a default under the order.

9.    Seller is solely liable for its employees, agents, contractors or subcontractors and their action while on Buyer's premises and the Seller indemnifies and will protect Buyer from all losses, claims, expenses, damages arising from or out of the presence or activity of Seller's employees, agents or subcontractor's while at Buyer's premises.

BB.    OVERSHIPMENT: Subject to inspection and acceptance, Buyer will be liable for payment only for quantities ordered and delivered. Overshipments shall be held at Seller's risk and expense for a reasonable time waiting shipping instructions. Shipping charges for returns shall be at Seller's expense.

CC.    GOVERNING LAW AND VENUE:  This Purchase Order shall be interpreted and governed in all respects according to the laws of the State of Ohio. Any legal proceeding shall be maintained in a court of competent jurisdiction in Clinton County, Ohio or in the Federal District Court, Southern District of Ohio. If Buyer institutes legal proceedings to enforce its rights herein, in addition to all applicable legal damages and remedies, Buyer shall be entitled to recover any costs of recovery, including attorney's fees.

Filed          22-CI-00637          10/31/2022          Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

# EXHIBIT

# C

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000019 of 000028

# PURCHASE ORDER

**R+L CARRIERS**

**R+L Transfer, Inc.**

PURCHASING DEPARTMENT
P.O. BOX 271, WILMINGTON, OH 45177

| PURCHASE ORDER NUMBER | REVISION | PAGE |
|---|---|---|
| 565668 | 0 | Page 1 of 2 |

THIS PURCHASE ORDER NUMBER MUST APPEAR ON ALL INVOICES, PACKING LISTS, CARTONS, AND CORRESPONDENCE RELATED TO THIS ORDER

| SHIP TO : | 600 Gillam Road<br><br>Wilmington, OH  45177<br>United States |
|---|---|

| VENDOR : | **PITTSBURG TANK AND TOWER**<br>**COMPANY INC**<br>**PO BOX 1849**<br>**HENDERSON, KY 42419**<br>**United States** |
|---|---|

| BILL TO : | A/P Billing Address<br>Accounts Payable<br>P O Box 8000<br>Wilmington, OH  45177<br>United States |
|---|---|

ALL MATERIALS NOT DELIVERED IN FORTY-FIVE (45) DAYS, UNLESS OTHERWISE SPECIFIED BY THE BUYER, WILL BE CONSIDERED CANCELED

| CUSTOMER ACCOUNT NO. | VENDOR NUMBER | DATE OF ORDER/BUYER | REVISED DATE/BUYER |
|---|---|---|---|
| | 68852 | 20-SEP-2021    Bates, Robert | |
| **PAYMENT TERMS**<br>Net 30 | | **SHIP VIA:** | **F.O.B**<br>Destination |
| **FREIGHT TERMS**<br>N/A | | **REQUESTOR/DELIVER TO**<br>Bates, Robert | **CONFIRM TO/TELEPHONE**<br>937-382-1494 |

| ITEM | PART NUMBER /DESCRIPTION | DELIVERY DATE | QUANTITY | UNIT | UNIT PRICE | EXTENSION |
|---|---|---|---|---|---|---|
| | All prices and amounts on this order are expressed in : US Dollar | | | | | |
| | INSPECTION | 50546<br>TANK CLEANING AND API 653 INSP COST<br>Mob / Demob<br>Tank cleaning field work - estimating 1 day<br>waste disposal 1,000 gal of fuel / sludge<br>API 653 Ouf to Service Inspection - 1MG Tank<br><br>vendor will supply gasket to reseal man-way entry.<br><br>Work to be scheduled week of Oct 4, 2021 | | | | | |
| 1 | | 04-OCT-2021<br>00:00:00 | 1 | Each | 21358.80 | 21,358.80 |
| | Your #:<br>TANK CLEANING & API 653 INS COST<br><br>SHIP TO: See Above | | | | | |

| | TOTAL | 21,358.80 |
|---|---|---|

ALL INVOICES PRESENTED FOR PAYMENT MUST CONTAIN THE VENDORS F.E.I.N. OR TAXPAYERS NUMBER.
THIS PURCHASE ORDER IS SUBJECT TO THE BUYERS TERMS AND CONDITIONS OF CONTRACT FOR SALE
WHICH ARE ON THE REVERSE HEREOF AND INCORPORATED BY REFERENCE HEREIN.

Clyde Gregory Sutton, Henderson Circuit Clerk

Presiding Judge: HON. KAREN L. WILSON (651294)

10/31/2022

22-CI-00637

Filed

COM : 000020 of 000028

R+L CARRIERS-
General Terms and Conditions

A.  ACCEPTANCE.

1.  This order is Buyer's offer to purchase the goods and/or services described on the reverse hereof from Seller. Buyer's placement of this order with Seller is expressly conditioned upon Seller's acceptance of all of the terms and conditions of purchase contained on or attached to this order.
2.  Any additional or different terms or conditions which may appear in any communication from Seller are hereby expressly objected to and shall not be effective or binding unless specifically agreed to in writing by Buyer's Purchasing Office, and no such additional or different terms or conditions in any printed form of Seller shall become part of this contract despite Buyer's acceptance of goods or services, unless such acceptance specifically recognizes and assents to their inclusions.
3.  Any objections by Seller to the terms and conditions hereof shall be ineffective unless Buyer is advised in writing thereof within 10 days of the date of this order.

B.  IDENTIFICATION: All invoices, packages, shipping notices, instruction manuals and other written documents affecting this order shall contain the purchase order number.  Packing lists shall be enclosed in each box or package shipped pursuant to this order, indicating the contents therein, invoices will not be processed for payment until all items invoices are received.

C.  SHIPPING INSTRUCTIONS: All goods are to be shipped freight prepaid, F.O.B. destination add to invoice, unless otherwise stated. Where Buyer has so authorized in writing, goods may be shipped F.O.B. shipping point, but Seller shall prepay all shipping charges, route the goods by the cheapest common carrier, or the carrier specified, and list said charges as a separate item on Seller's invoice. Each invoice for shipping charges shall be accompanied by the original or a copy of the bill indicating that such charges have been paid. Buyer reserves the right to reject C.O.D. shipments. Seller shall not insure the goods for Buyer's account during shipment except upon Buyer's written request, or where the shipping mode is parcel post.

D.  SPECIAL CHARGES: Seller shall be responsible for the payment of all charges for handling, packaging, wrapping, bags, containers and related matters unless Buyer has assumed an express obligation therefore by notation on the reverse side hereof.

E.  DELIVERY: Time is of the essence, and this order may be terminated if delivery is not made or services are not performed by the date specified in this order. No change in the scheduled delivery date or performance will be permitted without Buyer's prior written consent. No acceptance of goods or services after the scheduled delivery date will waive Buyer's rights with respect to such late delivery nor shall it be deemed a waiver of future compliance with the terms hereof.

F.  PAYMENT: Buyer will remit payment to Seller by mail and only upon the receipt of an original invoice, copies of invoices will not be accepted. Seller agrees not to deliver goods on a sight draft basis.

G.  PRICES: This order shall not be billed at prices higher than those shown on this order, unless such increased prices have been authorized by the Buyer.  If price is not stated on this order, it is agreed that the goods or services shall be billed at the price last quoted, or paid by a customer of Seller, or the prevailing market price, whichever is lower.

H.  CASH DISCOUNT: If Buyer is entitled to a cash discount, the period of computation thereof will commence on the date of acceptance or receipt of a correctly completed invoice, whichever is later. If an adjustment in payment is necessary due to damage, the cash discount period shall commence on the date on which an agreed adjustment of price is reached. If a cash discount is made part of the contract, but the invoice does not reflect the existence thereof, Buyer is entitled to a cash discount with the period commencing on the date Buyer determines that a cash discount applies.

I.  TAXES: Except as otherwise provided in this order, the contract price shall include all applicable Federal, State and local taxes of any kind in effect on the date of this order.

J.  ASSIGNMENT: Seller shall not assign this contract, or the right to payment due hereunder, without Buyer's prior written consent.

K.  LIENS, CLAIMS AND ENCUMBRANCES: Seller warrants and represents that all the goods will be delivered hereunder, be free and clear of all liens, claims or encumbrances of every kind.

L.  REJECTION: All goods purchased hereunder are subject to Buyer's inspection and approval.  If any of the materials or services supplied hereunder are defective in material or workmanship or otherwise not in conformity with the requirements of this order, Buyer shall have the right to either reject them or require their correction, and to return them at Seller's risk and expense, including transportation both ways. Goods rejected by Buyer for whatever reason shall be held, transported and/or stored at Seller's sole expense. Seller shall promptly reimburse Buyer for any such expenses.

M.  DEFAULT: Buyer may, subject to the provisions of paragraph "N" by written notice of default to Seller, cancel the whole or any part of this order or exercise any other remedy provided Buyers of goods by law or in equity including any remedy under the Uniform Commercial Code, in any of the following circumstances:

1.  If Seller fails to make delivery of the goods or to perform the services within the time specified herein or any extension thereof;
2.  If, in Buyer's good faith judgment, the Seller fails to perform any of the other provisions of this order or fails to make progress as to endanger performance of this order in accordance with its terms and does not cure such failure within a period of 10 days, or such longer period as Buyer may authorize in writing, after receipt of notice from Buyer specifying such failure;
3.  Seller is in breach of any of the terms or conditions of this order; or
4.  If Seller becomes insolvent or makes an assignment for the benefit of creditors, or if there shall be instituted by or against Seller any proceeding under any bankruptcy or for the appointment of a receiver or trustee in respect to any of Seller's property and such proceeding is not dismissed or cured within 60 days.

N.  REMEDIES: Not by way of limitation, the remedies of the parties include:

1.  If Buyer cancels this order in whole or in part as provided in paragraph "M" Buyer may procure upon such terms and in such manner as Buyer may deem appropriate goods or services similar to those canceled and Seller shall be liable to Buyer for any excess costs for such similar supplies or services, provided that Seller shall continue the performance of this order to the extent Buyer canceled under the provisions of this order.
2.  The rights and remedies of Buyer provided in this clause shall not be exclusive but cumulative and are in addition to any other rights and remedies provided by law or equity (or provided under the Uniform Commercial Code), or under this order.
3.  The failure of the Buyer to insist upon strict performance of any of the terms of this order or to exercise any rights hereunder shall not be construed as a waiver of Buyer's rights. Waiver of a breach of any provision of this Purchase Order shall not constitute waiver of full compliance with such provision nor shall it be construed as a waiver of any other breach.

O.  WARRANTIES: Seller warrants goods supplied and work or services performed under this order will conform to the specifications and requirements of this order and are merchantable and fit for the particular purposes for which goods are ordinarily employed.

1.  Seller shall be liable for all damages both to Buyer, requester, and its customers incurred as a result of any defect or breach of warranty in any item covered by this order.
2.  The foregoing express warranties shall be in addition to any warranty customarily made by Seller of its product and any implied warranties and shall be construed as conditions as well as warranties.
3.  SELLER'S WARRANTY SHALL EXTEND FOR A PERIOD OF 12 MONTHS AFTER THE ITEM IS DELIVERED AND ACCEPTED BY BUYER AND APPLIED TO ITS INTENDED USE.

P.  COMPLIANCE WITH LAWS: Seller shall comply with all Federal, State and local laws and regulations applicable to this order.

Q.  CHANGES: Buyer may at any time make changes in the delivery schedules, drawings, quantities, designs and specifications but no change will be allowed unless authorized by the Buyer in writing. Buyer may also make changes in the method of shipping or packing and place of delivery by any means or communication.  If any such changes affect cost or delivery schedules of this order, an equitable adjustment shall be made, provided Seller makes a written claim within 15 days of the date of Buyer's written notification.

R.  TITLE TO SPECIFICATIONS: Buyer shall at all times have title to all drawings and specifications furnished by Buyer or Seller and intended for use in connection with this order.  Seller shall not disclose such drawings and specifications to any person, firm or corporation other than Buyer's or Seller's employees, subcontractors, or Government Inspectors.  The Seller shall, upon Buyer's request, promptly return all drawings and specifications to the Buyer.

S.  BUYER'S PROPERTY: All material, including tools, furnished or specifically paid for by Buyer unless otherwise specified herein, shall be the property of the Buyer, shall be subject to removal at any time, without additional cost upon demand by the Buyer, shall be used only in filling orders from this Buyer, shall be kept separate from other materials or tools, and shall be clearly identified as the property of the Buyer. Seller assumes all liability for loss or damage, with the exception of normal wear and tear, and agrees to supply detailed statements of inventory promptly upon request.

T.  QUALITY STANDARDS. If a special brand is listed in this order, the goods being purchased must meet the standard for quality, performance, and use of such brand. If Seller is willing to supply a product equivalent to the designated special brand, it must first provide the Buyer with descriptive literature identifying its brand, including the quality, performance, and specifications therefore. If Buyer elects to accept goods purported to be equal to the special brand, the goods may be rejected and dealt with as provided in paragraph L hereof, if labor is determined to be nonconforming.

U.  INSPECTION AND QUALITY CONTROL

1.  All items furnished under this order by Seller to Buyer shall be subject to inspection and tests by Buyer.  To the extent practicable inspection may be made at all times and places, including the period of manufacture and prior to acceptance.
2.  If inspections or tests are made by Buyer on the premises of Seller, supplier or subcontractor, Seller without additional charge, shall provide all reasonable facilities and assistance for the safety and convenience of such inspectors in the performance of their duties.  If inspection or test is made at a point other than the premises of Seller, supplier or subcontractor, it shall be at the expense of Buyer except as otherwise provided in this order.  In case of rejections, Buyer shall not be liable for inclusion or value of samples used in connection with such inspection or test.  All inspections and tests by Buyer shall be performed in such manner as to not unduly delay the work.  Buyer reserves the right to charge Seller any additional cost to inspect and test when items are not ready at time such inspection and test is requested by Seller or when reinspection or retest is necessitated by prior rejection, inspection and acceptance or rejection of the items shall be made as promptly as practicable after delivery as may be specified herein.  Failure to inspect, accept or reject goods shall neither relieve Seller from responsibility for such supplies that are not in accordance with the order requirements nor impose liability on Buyer.

V.  INFRINGEMENTS: Seller warrants that Buyer's purchase, installation, and/or use of the goods covered hereby will not result in any claim or infringement, or actual infringement of any patent, trademark, copyright, franchise, or other intellectual property right.

W.  RISK OF LOSS: Regardless of F.O.B. Point, Seller agrees to bear all risk of loss, injury, or destruction of goods and materials ordered herein which occur prior to acceptance by Buyer. No such loss, injury, or destruction shall release Seller from any obligations hereunder.

X.  INDEMNITY: Seller shall indemnify and hold Buyer, all its officers, employees, successors, assigns, and/or customers harmless from and against all claims, losses, expenses, damages, causes of actions and liabilities of every kind and nature including without limitation reasonable attorney's fees, without waiver of Seller's obligation to indemnify Buyer hereunder, arising from or out of any alleged breach of any of Seller's obligations or warranties.

Y.  EQUAL EMPLOYMENT OPPORTUNITY: Seller agrees to comply with the provisions of all laws, rules and regulations, including Executive Orders, applicable to this order regarding nondiscrimination because of race, creed, color, sex, age, national origin, physical or mental handicap and veteran status.

Z.  OSHA: Seller shall comply with the conditions of the Federal Occupational Safety and Health Act of 1970 (OSHA), as amended, and the standard and regulations issued thereunder, and certifies that all items furnished and purchased under this order will conform to and comply with such applicable standards and regulations.

AA.  SERVICE OR INSTALLATION OF WORK: In the event this order requires the performance of work or installation of goods by Seller upon any property or project of Buyer, the following conditions shall also be applicable.

1.  Seller shall take precautions to protect all property and persons from damage or injury arising out of its work and shall comply with all fire, safety and other applicable regulations prescribed by a governmental agency and by Buyer and/or owner of the project upon which work is being performed, and shall be responsible for observance thereof by all subcontractors, employees, agents and representatives of Sellers and its subcontractors. Seller shall also obtain at its own expense and provide Buyer with proof of insurance coverage satisfactory to Buyer and conforming to all requirements of workmen's compensation and property damage, public liability, personal injury, employer's liability and other applicable insurance. The insurance shall contain an endorsement naming Buyer as an additional insured and shall provide that the insurance carrier will give Buyer written notice at least 30 days prior to the effective date of any cancellation. Seller shall furnish or direct its insurance carriers to furnish appropriate certificates of insurance to Buyer and upon the request of Buyer.

2.  Seller shall keep the premises and work free and clear of all mechanics' and materialmen's liens or claims; Seller shall promptly pay for all labor and material and if Seller fails to do so Buyer without waiving any rights or remedies against Seller or by reason of such failure may, but without any obligation to do so, pay the sums and deduct the amount of such payments from sums due Seller hereunder, and Buyer may withhold any payment to Seller until receiving such affidavits, waivers, and releases with respect to claims for labor and materials as Buyer may require.

3.  The work shall remain at Seller's risk prior to written acceptance by Buyer and/or the owner of the project and Seller shall repair at its own expense all work damaged or destroyed by any cause whatsoever.

4.  Seller shall observe and comply with the Safety Rules for (Outside) Contractors, established by Buyer, which are incorporated by reference herein, and which are available to Seller upon request. Further Seller shall observe and comply with the wages, hours and working conditions established by Buyer on the project or required of Buyer by an applicable labor agreement, conditions established by Buyer on the project or required of Buyer by an applicable labor agreement, state law or regulation, pertaining to prevailing wages. These terms extend to all subcontractors also.

5.  Seller shall act as an independent contractor and not as the agent or representative of Buyer.

6.  Seller shall perform its work in accordance with the schedules and work programs established by Buyer and shall fully cooperate with Buyer and others engaged in work on the entire project may be performed with the utmost speed, consistent with good practices.  In case of conflict, Buyer may direct the necessary coordination.

7.  Seller shall carry on its work so that the premises shall at all times be clean, orderly and free from debris and upon completion, shall remove all equipment and unused materials from the project; clean up all refuse and debris and leave the site of the work clean, orderly and in good condition.

8.  Seller shall require Seller's employees, agents, contractors or subcontractors to abide by Buyer's work and safety rules when work or services are performed at Buyer's premises. Buyer has the right to exclude personnel from Buyer's premises who do not abide by such rules, and at Buyer's election, to declare a default under the order.

9.  Seller is solely liable for its employees, agents, contractors or subcontractors and their action while on Buyers premises and the Seller indemnifies and will protect Buyer from all losses, claims, expenses, damages arising from or out of the presence or activity of Seller's employees, agents or subcontractor's while at Buyer's premises.

BB.  OVERSHIPMENT: Subject to inspection and acceptance, Buyer will be liable for payment only for quantities ordered and delivered. Overshipments shall be held at Seller's risk and expense for a reasonable time waiting shipping instructions.  Shipping charges for returns shall be at Seller's expense.

CC.  GOVERNING LAW AND VENUE: This Purchase Order shall be interpreted and governed in all respects according to the laws of the State of Ohio. Any legal proceeding shall be maintained in a court of competent jurisdiction in Clinton County, Ohio or in the Federal District Court, Southern District of Ohio.  If Buyer institutes legal proceedings to enforce its rights herein, in addition to all applicable legal damages and remedies, Buyer shall be entitled to recover any costs of recovery, including attorney's fees.

Filed 11/09/2023 13:50 The Gregory Sutton, Hamilton Circuit Clerk

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000021 of 000028

Filed 22-CI-00637 10/31/2022 Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

# EXHIBIT

# D

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000022 of 000028

Filed        22-CI-00637        10/31/2023        Kyle Gregory Sutton, Henderson Circuit Clerk
NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1



**PITTSBURG TANK & TOWER GROUP**
**MAINTENANCE DIVISION** Since 1919
*"100 years and still climbing"*

1 Watertank Place
PO Box 1849
Henderson, KY 42419
P: 270-826-9000
F: 270-767-6912
www.pttg.com

Thursday, December 2, 2021

Robert Bates
Vice President
R & L Carriers
600 Gillam Road
Wilmington, OH 45177
937-655-5029
rbates@rlcarriers.com

Robert,

Since 1919, Pittsburg Tank & Tower Group Maintenance Division has been providing tank services to our customers in over 60 countries, proudly making us a Global Company. Our wealth of experience encompasses all aspects of tank maintenance services, from paint and repair to dismantle and inspections. Our expertise expands beyond maintenance to tank design, fabrication, erection and professional engineering services for new tanks and modifications to existing tanks, including raising, lowering and moving services.

Having been ranked in the Top 600 Specialty Contractors and among the top 15 steel erectors according to Engineering News Record, it was natural to expand our offerings into the Custom Engineering and Manufacturing Industry. Our sister company, Allstate Tower Inc., manufactures structural steel components for towers and agricultural material handling, including complete turn-key systems and installation services.

At Pittsburg Tank & Tower Group, it's not only about the products we produce, but the people as well. Being a family-operated company with a commitment to the Safety and Health of our family of employees, we have worked with the Commonwealth of Kentucky's Labor Cabinet to achieve our SHARP Certification (Safety and Health Achievement Recognition Program), and we are recognized as a Drug Free Workplace in accordance with the standards set forth by the regulation; 803 KAR 25:280 Certification of Drug-Free Workplace.

We are proud to provide you with this proposal and look forward to working with you should you decide to accept it. To accept the proposal, simply sign and date one (1) copy and return it to our Henderson, KY office either by mail, fax or email.

Please feel free to contact us should you have any questions or concerns, or simply want to discuss the proposal further.

Respectfully,

**Pittsburg Tank & Tower Group**
**Maintenance Division**

**Mark Moesner**
**National Accounts Manager**
270-869-9400 Ext: 4612
270-873-8302 Fax
mmoesner@pttg.com

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000023 of 000028

Paint • Repair • Dismantle • Inspect • Reinsulate • Tanks Raised, Lowered, and Moved
New and Used Tanks

Filed        22-CI-00637        10/31/2023        Kyle Gregory Sutton, Henderson Circuit Clerk

Filed 22-CI-00637 10/31/2022 Clyde Gregory Sutton, Henderson Circuit Clerk
NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1



# PITTSBURG TANK & TOWER GROUP

**MAINTENANCE DIVISION** Since 1919

*"100 years and still climbing"*

1 Watertank Place
PO Box 1849
Henderson, KY 42419
P: 270-826-9000
F: 270-767-6912
www.pttg.com

Thursday, December 2, 2021

| | | | |
|---|---|---|---|
| **TO** | : R & L Carriers | **ATTN** | : Robert Bates |
| | 600 Gillam Road | | Vice President |
| | Wilmington, OH 45177 | | |
| EMAIL | : rbates@rlcarriers.com | PHONE | : 937-655-5029 |

**RE: Floor Overlay and Misc. Repairs for Tank located at 600 Gillam Rd, Wilmington, OH 45177**

In accordance with price, terms and conditions quoted below, we propose to furnish all labor, material, equipment and insurance necessary to complete the following: **one (1) 1,000,000-gallon ground storage tank (74'D x 32'H).**

## SCOPE OF WORK

Install a ¼" thick steel floor overlay including sand fill over existing floor per API standards.

Install a sump into the new floor and extend piping to sump.

Caulk/Grout around the base of the tank to foundation connection.

Repair the liquid level indicator and replace damaged parts as needed, then adjust and calibrate the unit.

Seam-weld the center column wear plate to the tank.

**All above completed for the sum of ................\$229,854.00**
**Two Hundred Twenty-Nine Eight Hundred Fifty-Four Dollars and Zero Cents.**

**Depending on the number of items accepted, prices may vary. Please refer to applicable codes.**

- Warning: Do not attach any additional loading to your tank/tower unless structural integrity is known to be sufficient. For analysis call PTTM.
- Our welders are certified in accordance with ASME section IX code.
- In the event the tank must be drained, it should be drained by the owner, prior to our arrival (refer to Item #2 on our Terms & Conditions page).
- Debris generated from repairs and/or painting will be placed in containers provided by the owner and to be disposed of by the owner.

Paint • Repair • Dismantle • Inspect • Reinsulate • Tanks Raised, Lowered, and Moved
New and Used Tanks

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000024 of 000028

Filed 22-CI-00637 10/31/2022 Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1



1 Watertank Place, PO Box 1849, Henderson, KY 42419
P: 270-826-9000 F: 270-767-6912 www.pttg.com

Thursday, December 02, 2021

**Terms & Conditions**

1)  Prior to start of work, Owner will be furnished a certificate of insurance covering Workman's Compensation, Occupational Disease, Employer's Liability, and General Liability.
2)  If tank is to be drained prior to our arrival, it shall be drained by owner, if it becomes necessary to drain the tank while on site, it must be drained by the Owner/Customer.
3)  If needed a pressure release valve will be furnished during the cleaning and painting operation. Owner required to notify PTTM prior to mobilization if required.
4)  In the event interior and/or exterior complete tank repainting is not included in this scope of work, all new tank appurtenances furnished and installed by PTTM as part of this scope of work shall be field primed and finish coated to match existing coating system(s), unless specifically excluded from our scope of work. Color to match as close as possible.
5)  No paint shall be applied during wet, damp, or inclement weather.
6)  All paint will be delivered to the job site in original containers with contents identified by the manufacturer.
7)  Customer will be required to clear/move vehicles and equipment a safe distance from the job site to prevent damage and place physical barricades around the perimeter to restrict access.
8)  Work to be performed using our standard wage scale with Open Shop personnel, by mechanics skilled in their trade.
9)  All workmanship is guaranteed for twelve (12) months after completion.
10) Owner is to provide dumpster(s) for trash, paint consumables, blast media, and all other waste produced during course of job, including disposal of said waste.
11) Handling, removal, and/or disposal of hazardous or contaminated material (e.g., asbestos, lead, chemicals, heavy metals, etc.) requiring special handling or transportation to a specific disposal site are not included in the submitted quotation for work. Unless specifically included in our scope of work.
12) This quote does not provide for the shrouding or containment of blast media and paint.
13) Owner understands and agrees that all Federal, State, and Municipal taxes imposed on Contractor with respect to the outlined work are additional expenses not included in the contract and further assumes the obligation of paying said additional costs incurred by Contractor. PTTM does not include costs for any permits, local licenses, fees, etc. in this proposal.
14) OWNER / CONTRACTOR agree that the exclusive venue for any litigation arising out of or relating to this Agreement shall be in the Circuit Court of Henderson County, Kentucky, that this Agreement and any litigation arising thereunder shall be governed, construed and interpreted according to Kentucky law.
15) In the event OWNER initiates any litigation against PTTM in contravention of this venue provision, OWNER shall pay PTTM's attorney's fees and costs incurred in obtaining a dismissal and transfer of the litigation to the proper venue in the Circuit Court of Henderson County, Kentucky.
16) OWNER and PTTM hereby waive any right they may otherwise have to venue in a federal court including, but not limited to, any right arising under federal question or diversity jurisdiction.

**TERMS**
25% Signing SOW, 25% Start of Project, 50% Completion

The parties approving this contract certify that they are fully authorized to do so, and that all legal requirements have been complied with. You are hereby authorized to furnish all labor, material, equipment and insurance required to complete the work mentioned in the above proposal, for which the undersigned agrees to pay the amount mentioned in said proposal. OWNER / CONTRACTOR agree that the exclusive venue for any litigation arising out of or relating to this Agreement shall be in the Circuit Court of Henderson County, Kentucky and that this Agreement and any litigation arising thereunder shall be governed, construed and interpreted according to Kentucky law. In the event OWNER initiates any litigation against PTTM in contravention of this venue provision, OWNER shall pay PTTM's attorney's fees and costs incurred in obtaining a dismissal and transfer of the litigation to the proper venue in the Circuit Court of Henderson County, Kentucky. OWNER and PTTM hereby waive any right they may otherwise have to venue in a federal court including, but not limited to, any right arising under federal question or diversity jurisdiction.

## ALL QUOTATIONS SUBJECT TO ACCEPTANCE WITHIN 60 DAYS

Accepted : December 2 , 2021

Company : R & L Carriers [PO# 575536]

By : Robert Bates

Title : VP Purchasing

Respectfully Submitted by:
**Pittsburg Tank & Tower Group
Maintenance Division**

By : _____

Jordan Pyles, Executive Director of Sales
jpyles@pttg.com
270-869-9400 Ext: 4601

Paint • Repair • Dismantle • Inspect • Reinsulate • Tanks Raised, Lowered, and Moved
New and Used Tanks

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000025 of 000028

Filed          22-CI-00637          10/31/2022          Clyde Gregory Sutton, Henderson Circuit Clerk

NOT ORIGINAL DOCUMENT
01/24/2023 11:54:17 AM
95181-1

# EXHIBIT

# E

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000026 of 000028

# PURCHASE ORDER





| PURCHASE ORDER NUMBER | REVISION | PAGE |
|---|---|---|
| 575536 | 0 | Page 1 of 2 |

THIS PURCHASE ORDER NUMBER MUST APPEAR ON ALL INVOICES, PACKING LISTS, CARTONS, AND CORRESPONDENCE RELATED TO THIS ORDER

PURCHASING DEPARTMENT
P.O. BOX 271, WILMINGTON, OH 45177

SHIP TO :

600 Gillam Road

Wilmington, OH 45177
United States

VENDOR :  **PITTSBURG TANK AND TOWER**
**COMPANY INC**
**PO BOX 1849**
**HENDERSON, KY 42419**
**United States**

BILL TO :

A/P Billing Address
Accounts Payable
P O Box 8000
Wilmington, OH 45177
United States

ALL MATERIALS NOT DELIVERED IN FORTY-FIVE (45) DAYS, UNLESS OTHERWISE SPECIFIED BY THE BUYER, WILL BE CONSIDERED CANCELED

| CUSTOMER ACCOUNT NO. | VENDOR NUMBER | DATE OF ORDER/BUYER | REVISED DATE/BUYER |
|---|---|---|---|
| | 68852 | 02-DEC-2021  Bates, Robert | |

| PAYMENT TERMS | SHIP VIA: | F.O.B |
|---|---|---|
| Net 30 | | Destination |

| FREIGHT TERMS | REQUESTOR/DELIVER TO | CONFIRM TO/TELEPHONE |
|---|---|---|
| N/A | Bates, Robert | 937-382-1494 |

| ITEM | PART NUMBER /DESCRIPTION | DELIVERY DATE | QUANTITY | UNIT | UNIT PRICE | EXTENSION |
|---|---|---|---|---|---|---|
| | All prices and amounts on this order are expressed in : US Dollar | | | | | |
| 1 | | | 1 | Each | 229854.00 | 229,854.00 |
| | Your #: | | | | | |
| | FLOOR OVERLAY, SUMP WITH PIPE EXTENSION, CAULK AROUND RING FOUNDATION, SEAL WELD EHT CENTER COLUMN, FIX LLI | | | | | |
| | SCOPE OF WORK | | | | | |
| | Install a ¼ thick steel floor overlay including sand fill over existing floor per API standards. Install a sump into the new floor and extend piping to sump. Caulk/Grout around the base of the tank to foundation connection. Repair the liquid level indicator and replace damaged parts as needed, then adjust and calibrate the unit. Seam-weld the center column wear plate to the tank. | | | | | |
| | SHIP TO: See Above | | | | | |

ALL INVOICES PRESENTED FOR PAYMENT MUST CONTAIN THE VENDORS F.E.I.N. OR TAXPAYERS NUMBER.
THIS PURCHASE ORDER IS SUBJECT TO THE BUYERS TERMS AND CONDITIONS OF CONTRACT FOR SALE
WHICH ARE ON THE REVERSE SIDE HEREOF AND INCORPORATED BY REFERENCE HEREIN.

| TOTAL | 229,854.00 |
|---|---|

Clyde Gregory Sutton, Henderson Circuit Clerk

10/31/2022

22-CI-00637

Filed

Presiding Judge: HON. KAREN L. WILSON (651294)

COM : 000027 of 000028

R+L CARRIERS-
General Terms and Conditions

**A.     ACCEPTANCE.**

1.      This order is Buyer's offer to purchase the goods and/or services described on the reverse hereof from Seller. Buyer's placement of this order with Seller is expressly conditioned upon Seller's acceptance of all of the terms and conditions of purchase contained on or attached to this order.

2.      Any additional or different terms or conditions which may appear in any communication from Seller are hereby expressly objected to and shall not be effective or binding unless specifically agreed to in writing by Buyer's Purchasing Officer, and no such additional or different terms or conditions in any printed form of Seller shall become part of this contract despite Buyer's acceptance of goods or services, unless such acceptance specifically recognizes and assents to their inclusions.

3.      Any objections by Seller to the terms and conditions hereof shall be ineffective unless Buyer is advised in writing thereof within 10 days of the date of this order.

**B.     IDENTIFICATION:** All invoices, packages, shipping notices, instruction manuals and other written documents affecting this order shall contain the purchase order number. Packing lists shall be enclosed in each box or package shipped pursuant to this order, indicating the contents therein, invoices will not be processed for payment until all items invoices are received.

**C.     SHIPPING INSTRUCTIONS:** All goods are to be shipped freight prepaid, F.O.B. destination add to invoice, unless otherwise stated. Where Buyer has so authorized in writing, goods may be shipped F.O.B. shipping point, but Seller shall prepay all shipping charges, route the goods by the cheapest common carrier, or the carrier specified, and list said charges as a separate item on Seller's Invoice. Each invoice for shipping charges shall be accompanied by the original or a copy of the bill indicating that such charges have been paid. Buyer reserves the right to reject C.O.D. shipments. Seller shall not insure the goods for Buyer's account during shipment except upon Buyer's written request, or where the shipping mode is parcel post.

**D.     SPECIAL CHARGES:** Seller shall be responsible for the payment of all charges for handling, packaging, wrapping, bags, containers and related matters unless Buyer has assumed an express obligation therefore by notation on the reverse side hereof.

**E.     DELIVERY:** Time is of the essence, and this order may be terminated if delivery is not made or services are not performed by the date specified in this order. No change in the scheduled delivery date or performance will be permitted without Buyer's prior written consent. No acceptance of goods or services after the scheduled delivery date will waive Buyer's rights with respect to such late delivery nor shall it be deemed a waiver of future compliance with the terms hereof.

**F.     PAYMENT:** Buyer will remit payment to Seller by mail and only upon the receipt of an original invoice, copies of invoices will not be accepted. Seller agrees not to deliver goods on a sight draft basis.

**G.     PRICES:** This order shall not be billed at prices higher than those shown on this order, unless such increased prices have been authorized by the Buyer. If price is not stated on this order, it is agreed that the goods or services shall be billed at the price last quoted, or paid by a customer of Seller, or the prevailing market price, whichever is lower.

**H.     CASH DISCOUNT:** If Buyer is entitled to a cash discount, the period of computation thereof will commence on the date of acceptance or receipt of a correctly completed invoice, whichever is later. If an adjustment in payment is necessary due to damage, the cash discount period shall commence on the date on which an agreed adjustment of price is reached. If a cash discount is made part of the contract, but the invoice does not reflect the existence thereof, Buyer is entitled to a cash discount with the period commencing on the date Buyer determines that a cash discount applies.

**I.     TAXES:** Except as otherwise provided in this order, the contract price shall include all applicable Federal, State and local taxes of any kind in effect on the date of this order.

**J.     ASSIGNMENT:** Seller shall not assign this contract, or the right to payment due hereunder, without Buyer's prior written consent.

**K.     LIENS, CLAIMS AND ENCUMBRANCES:** Seller warrants and represents that all the goods will when delivered hereunder, be free and clear of all liens, claims or encumbrances of every kind.

**L.     REJECTION:** All goods purchased hereunder are subject to Buyer's inspection and approval. If any of the materials or services supplied hereunder are defective in material or workmanship or otherwise not in conformity with the requirements of this order, Buyer shall have the right to either reject them or accept their correction, and to return them at Seller's risk and expense, including transportation both ways. Goods rejected by Buyer for whatever reason shall be held, transported and/or stored at Seller's sole expense. Seller shall promptly reimburse Buyer for any such expenses.

**M.     DEFAULT:** Buyer may, subject to the provisions of paragraph "N" by written notice of default to Seller, cancel the whole or any part of this order or exercise any other remedy provided Buyer's of goods by law or in equity including any remedy under the Uniform Commercial Code, in any of the following circumstances:

1.      If Seller fails to make delivery of the goods or to perform the services within the time specified herein or any extension thereof;

2.      If, in Buyer's good faith judgment, the Seller fails to perform any of the other provisions of this order or fails to make progress as to endanger performance of this order in accordance with its terms and does not cure such failure within a period of 10 days, or such longer period as Buyer may authorize in writing, after receipt of notice from Buyer specifying such failure;

3.      Seller is in breach of any of the terms or conditions of this order; or

4.      If Seller becomes insolvent or makes an assignment for the benefit of creditors, or if there shall be instituted by or against Seller any proceeding under any bankruptcy or for the appointment of a receiver or trustee in respect to any of Seller's property and such proceeding is not dismissed or cured within 60 days.

**N.     REMEDIES:** Not by way of limitation, the remedies of the parties include:

1.      If Buyer cancels this order in whole or in part as provided in paragraph "M" Buyer may procure upon such terms and in such manner as Buyer may deem appropriate goods or services similar to those canceled and Seller shall be liable to Buyer for any excess costs for such similar supplies or services, provided that Seller shall continue the performance of this order to the extent Buyer canceled under the provisions of this order.

2.      The rights and remedies of Buyer provided in this clause shall not be exclusive but cumulative and are in addition to any other rights and remedies provided by law or equity (or provided under the Uniform Commercial Code), or under this order.

3.      The failure of the Buyer to insist upon strict performance of any of the terms of this order or to exercise any rights hereunder shall not be construed as a waiver of Buyer's rights. Waiver of a breach of any provision of this Purchase Order shall not constitute waiver of full compliance with such provision nor shall it be construed as a waiver of any other breach.

**O.     WARRANTIES:** Seller warrants goods supplied and work or services performed under this order will conform to the specifications and requirements of this order and are merchantable and fit for the particular purposes for which goods are ordinarily employed.

1.      Seller shall be liable for all damages both to Buyer, requester, and its customers incurred as a result of any defect or breach of warranty in any item covered by this order.

2.      The foregoing express warranties shall be in addition to any warranty customarily made by Seller of its product and any implied warranties and shall be construed as conditions as well as warranties.

3.      SELLER'S WARRANTY SHALL EXTEND FOR A PERIOD OF 12 MONTHS AFTER THE ITEM IS DELIVERED AND ACCEPTED BY BUYER AND APPLIED TO ITS INTENDED USE.

**P.     COMPLIANCE WITH LAWS:** Seller shall comply with all Federal, State and local laws and regulations applicable to this order.

**Q.     CHANGES:** Buyer may at any time make changes in the delivery schedules, drawings, quantities, designs and specifications but no change will be allowed unless authorized by the Buyer in writing. Buyer may also make changes in the method of shipping or packing and place of delivery by any means or communication. If any such change affects cost or delivery schedules of this order, an equitable adjustment shall be made, provided Seller makes a written claim within 15 days of the date of Buyer's written notification.

**R.     TITLE TO SPECIFICATIONS:** Buyer shall at all times have title to all drawings and specifications furnished by Buyer or Seller and intended for use in connection with this order. Seller shall not disclose such drawings and specifications to any person, firm or corporation other than Buyer's or Seller's employees, subcontractors, or Government Inspectors. The Seller shall, upon Buyer's request, promptly return all drawings and specifications to the Buyer.

**S.     BUYER'S PROPERTY:** All material, including tools, furnished or specifically paid for by Buyer unless otherwise specified herein, shall be the property of the Buyer, shall be subject to removal at any time, without additional cost upon demand by the Buyer, shall be used only in filling orders from the Buyer, shall be kept separate from other materials or tools, and shall be clearly identified as the property of the Buyer. Seller assumes all liability for loss or damage, with the exception of normal wear and tear, and agrees to supply detailed statements of inventory promptly upon request.

**T.     QUALITY STANDARDS.** If a special brand is listed in this order, the goods being purchased must meet the    standard for quality, performance, and use of such brand. If Seller is willing to supply a product equivalent to the designated special brand, it must first provide the Buyer with descriptive literature identifying its brand, including the quality, performance, and specifications therefore. If Buyer elects to accept goods purported to be equal to the special brand, the goods may be rejected and dealt with as provided in paragraph L hereof, if labor is determined to be nonconforming.

**U.     INSPECTION AND QUALITY CONTROL**

1.      All items furnished under this order by Seller shall be subject to inspection and tests by Buyer.  To the extent practicable inspection may be made at all times and places, including the period of manufacture and prior to acceptance.

2.      If inspections or tests are made by Buyer on the premises of Seller, supplier or subcontractor, Seller without additional charge, shall provide all reasonable facilities and assistance for the safety and convenience of such Inspectors in the performance of their duties. If inspection or test is made at a point other than the premises of Seller, supplier or subcontractor, it shall be at the expense of Buyer except as otherwise provided in this order.  In case of rejections, Buyer shall not be liable for any reduction in value of samples used in connection with such inspection or test.  All inspections and tests by Buyer shall be performed in such manner as to not unduly delay the work.  Buyer reserves the right to charge Seller any additional cost to inspect and test when items are not ready at time such inspection and test is requested by Seller or when reinspection or retest is necessitated by prior rejection, inspection and acceptance or rejection of the items shall be made as promptly as practicable after delivery as may be specified herein.  Failure to inspect, accept or reject goods shall neither relieve Seller from responsibility for such supplies that are not in accordance with the order requirements nor impose liability on Buyer.

**V.     INFRINGEMENTS:** Seller warrants that Buyer's purchase, installation, and/or use of the goods covered hereby will not result in any claim or infringement, or actual infringement of any patent, trademark, copyright, franchise, or other intellectual property right.

**W.     RISK OF LOSS:** Regardless of F.O.B. Point, Seller agrees to bear all risk of loss, injury, or destruction of goods and materials ordered herein which occur prior to acceptance by Buyer. No such loss, injury, or destruction shall release Seller from any obligations hereunder.

**X.     INDEMNITY:** Seller shall indemnify and hold Buyer, its officers, employees, successors, assigns, and/or customers harmless from and against all claims, losses, expenses, damages, causes of actions and liabilities of every kind and nature including without limitation reasonable attorney's fees, without waiver of Seller's obligation to indemnify Buyer hereunder, arising from or out of any alleged breach of any of Seller's obligations or warranties.

**Y.     EQUAL EMPLOYMENT OPPORTUNITY:** Seller agrees to comply with the provisions of all laws, rules and regulations, including Executive Orders, applicable to this order regarding nondiscrimination because of race, creed, color, sex, age, national origin, physical or mental handicap and veteran status.

**Z.     OSHA:** Seller shall comply with the conditions of the Federal Occupational Safety and Health Act of 1970 (OSHA), as amended, and the standard and regulations issued thereunder, and certifies that all items furnished and purchased under this order will conform to and comply with such applicable standards and regulations.

**AA.     SERVICE OR INSTALLATION OF WORK:** In the event of this order requires the performance of work or installation of goods by Seller upon any property or project of Buyer, the following conditions shall also be applicable.

1.      Seller shall take precautions to protect all property and persons from damage or injury arising out of its work and shall comply with all fire, safety and other applicable regulations prescribed by a governmental agency and by Buyer and/or owner of the project upon which work is being performed, and shall be responsible for observance thereof by all subcontractors, employees, agents and representatives of Sellers and its subcontractors.  Seller shall also obtain at its own expense and provide Buyer with proof of insurance coverage satisfactory to Buyer for workmen's compensation and property damage, public liability, personal injury, employer's liability and other applicable insurance.  The insurance shall contain an endorsement naming Buyer as an additional insured and shall provide that the insurance carrier will give Buyer written notice at least 30 days prior to the effective date of any cancellation.  Seller shall furnish or direct its insurance carriers to furnish appropriate certificates of insurance to Buyer and upon the request of Buyer.

2.      Seller shall keep the premises and work free and clear of all mechanics' and materialmen's liens or claims; Seller shall promptly pay for all labor and material and if Seller fails to do so Buyer without waiving any rights or remedies against Seller for any reason of such failure may, but without any obligation to do so, pay the same and deduct the amount of such payments from sums due Seller hereunder, and Buyer may withhold any payment to Seller until receiving such affidavits, waivers, and releases with respect to claims for labor and materials as Buyer may require.

3.      The work shall remain at Seller's risk prior to written acceptance by Buyer and/or the owner of the project and Seller shall repair at its own expense all work damaged or destroyed by any cause whatsoever.

4.      Seller shall observe and comply with the Safety Rules for (Outside) Contractors, established by Buyer, which are incorporated by reference herein, and which are available to Seller upon request. Further Seller shall observe and comply with the wages, hours and working conditions established by Buyer on the project or required of Buyer by an applicable labor agreement, conditions established by Buyer on the project or required of Buyer by an applicable labor agreement, state law or regulation, pertaining to prevailing wages. These terms extend to all subcontractors also.

5.      Seller shall act as an Independent contractor and not as the agent or representative of Buyer.

6.      Seller shall perform its work in accordance with the schedules and work programs established by Buyer and shall fully cooperate with Buyer and others engaged in work on the entire project may be performed with the utmost speed, consistent with good practices.  In case of conflict, Buyer may direct the necessary coordination.

7.      Seller shall carry on its work so that the premises shall at all times be clean, orderly and free from debris and upon completion, shall remove all equipment and unused materials from the project; clean up all refuse and debris and leave the site of the work clean, orderly and in good condition.

8.      Seller shall require Seller's employees, agents, contractors or subcontractors to abide by Buyer's work and safety rules when work or services are performed at Buyer's premises. Buyer has the right to exclude personnel from Buyer's premises who do not abide by such rules, and at Buyer's election, to declare a default under the order.

9.      Seller is solely liable for its employees, agents, contractors or subcontractors and their action while on Buyer's premises and the Seller indemnifies and will protect Buyer from all losses, claims, damages arising from or out of the presence or activity of Seller's employees, agents or subcontractor's while at Buyer's premises.

**BB.     OVERSHIPMENT:** Subject to inspection and acceptance, Buyer will be liable for payment only for quantities ordered and delivered. Overshipments shall be held at Seller's risk and expense for a reasonable time waiting shipping instructions. Shipping charges for returns shall be at Seller's expense.

**CC.     GOVERNING LAW AND VENUE:** This Purchase Order shall be interpreted and governed in all respects according to the laws of the State of Ohio. Any legal proceeding shall be maintained in a court of competent jurisdiction in Clinton County, Ohio or in the Federal District Court, Southern District of Ohio.  If Buyer institutes legal proceedings to enforce its rights herein, in addition to all applicable legal damages and remedies, Buyer shall be entitled to recover any costs of recovery, including attorney's fees.

Presiding Judge: HON. KAREN L. WILSON (651294)     Gregory Auto Henderson Circuit Clerk     23CI00028     Filed     COM : 000028 of 000028     COM : 000028 of 000028